IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | § § § | |
| Plaintiff, | § § | |
| VS. | § § § | Civil Action No. 3:15-CV-0641-D |
| S&B INDUSTRY, INC. d/b/a FOX CONN S&B, | § § § | |
| Defendant. | § § | |

MEMORANDUM OPINION
AND ORDER

This is an action by plaintiff Equal Employment Opportunity Commission ("EEOC") under Title I of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq*., and Title I of the Civil Rights Act of 1991, 42 U.S.C. 1981a. The EEOC alleges that defendant S&B Industry, Inc. d/b/a Fox Conn S&B ("S&B") discriminated against Katelynn Baker ("Baker") and Tia Rice ("Rice") by failing or refusing to hire them because of their disability (hearing impairment), and failing or refusing to provide them with a reasonable accommodation during the application process. S&B moves for summary judgment, and the EEOC moves for partial summary judgment. Concluding that there is a genuine issue of material fact regarding whether S&B was the "prospective employer" or "joint employer" of Rice and Baker, the court denies S&B's motion for summary judgment. Treating the EEOC's untimely motion for partial summary judgment as a Fed. R. Civ. P. 12(c) motion for judgment on the pleadings, the court grants the motion in part and denies it in part.

I

S&B operates a cell phone repair and testing facility.[1]  In addition to its own employee workforce, S&B contracts with various staffing agencies to fill certain work assignments with temporary contractors.  During 2013 S&B contracted with Staff Force, a temporary staffing agency, to fill its temporary contractor assignments.  S&B maintains that Staff Force was "the sole employer of all temporary workers provided by Staff Force," and that "Staff Force was in charge of hiring them, managing them, paying them, and, if necessary, disciplining them."  D. 3/9/16 Br. 6.  Staff Force employed its own onsite supervisor, Estela Blacknell ("Blacknell"), who worked full-time at S&B's facility supervising and managing Staff Force employees.

In June 2013 Rice and Baker applied for jobs with Staff Force.  Rice and Baker are both "severely to profoundly" deaf and can only communicate using sign language or writing notes.  D. 3/9/16 Br. 5.  Staff Force recruiter Brenda Trevino ("Trevino") was aware of their hearing impairments, and, during their application for a job with Staff Force, communicated with them in writing.  Rice and Baker completed Staff Force employment paperwork that provided, *inter alia*, that they were Staff Force employees and that work assignments with Staff Force clients, such as S&B, were temporary.  Trevino informed Rice and Baker that

---

[1]Because both sides move for summary judgment, the court will recount the evidence that is undisputed, and, when it is necessary to set out evidence that is contested, will do so favorably to the side who is the summary judgment nonmovant in the context of that evidence.  *See, e.g., GoForIt Entm't, LLC v. DigiMedia.com L.P.*, 750 F.Supp.2d 712, 718 n.4 (N.D. Tex. 2010) (Fitzwater, C.J.) (quoting *AMX Corp. v. Pilote Films*, 2007 WL 1695120, at *1 n.2 (N.D. Tex. June 5, 2007) (Fitzwater, J.)).

they were to report to S&B the following day so that they, along with other Staff Force employees, could participate in a group interview for potential work assignments at S&B.

S&B contends that on June 14 and June 18, 2013 (the days on which Rice and Baker interviewed at S&B), the only assignments it was seeking to fill were (1) several Triage Station operator assignments[2] and (2) a senior Diagnostic Engineer Technician assignment.[3] It is undisputed that Rice and Baker were not qualified for the Diagnostic Engineer Technician assignment.[4]  S&B maintains that Rice and Baker also were not qualified to perform Triage Station testing because of their hearing impairments.[5]  The EEOC contends

---

[2]S&B contends that a Triage Station operator's primary duty is to check and test the various functions of iPhones, including the volume accuracy of the voice recording function, the volume and picture accuracy of the video recording function, and the volume accuracy and functionality of the headset jack with a headset plugged in.  To perform these tests, each Triage Station worker must speak into the iPhone words like "Hello, Hello, Hello," record what was said, play it back, and check the various volume levels of the iPhone (on the regular sound speaker, the video camera, and the sound on the headset) to determine whether it works properly or needs repair.  Typically, someone working at the Triage Station assignment tests eight to ten iPhones at a time and is generally expected to test around 333 iPhones per day.

[3]The Diagnostic Engineer Technician assignment requires at least two years' working experience in an ISO (International Organization for Standardization) certified electronic manufacturing/repair facility and requires anyone given this assignment to pass a "troubleshooting exam" relating to knowledge of electronics, the purposes of different parts of a smart phone device, and how to respond to certain device failure messages.

[4]Neither Rice nor Baker had any working experience at an ISO certified electronic manufacturing/repair facility, neither could create and generate reports necessary to track and trend all department metrics and measurements, and neither could answer any questions correctly on the "troubleshooting exam."

[5]S&B contends that Rice and Baker were not qualified for this position because they cannot audibly speak and record words, they cannot check the audio or video playback of an iPhone to make sure the volume is accurate at different levels, they cannot hear an iPhone

- 3 -

that there were numerous positions at S&B that would not have required hearing or listening to devices,[6] and that, in fact, during the 1½ years that Blacknell worked at S&B, she never observed any employees in the repair department of S&B performing any job duties that required hearing.

The June 14, 2013 interview was conducted by Victor Fontes ("Fontes"), S&B's Engineering Manager, and Jeremiah Johnson ("Johnson"), a supervisor on S&B's Sprint iPhone line. Trevino and Blacknell were also present. Although Trevino allegedly told Rice and Baker that she would provide a sign language interpreter during the interview, none was provided. S&B maintains that no one at Staff Force alerted Blacknell or provided advance notice to S&B that Rice and Baker were deaf. It also maintains that neither Rice nor Baker ever requested that S&B provide them with an interpreter. Because no sign language interpreter was present, it was necessary for Trevino to write down for Baker and Rice the questions that Fontes and Johnson asked the group. Following the group interview, Fontes and Johnson selected eight Staff Force employees for the Triage Station assignment. Five Staff Force employees, including Rice and Baker, were not selected. S&B maintains that Fontes explained to Blacknell that, because Rice and Baker could not hear, they could not perform the Triage Station assignment, which requires continuously testing the functionality

_____

ring, and they cannot hear any sounds recorded by an iPhone

[6]The EEOC contends that S&B could have hired Rice and Baker to perform duties such as charging phones, cleaning charger ports, or wiping the phones with alcohol and placing protective screens on the phone, and that such duties would not have required hearing or listening to devices.

and volume levels on iPhones.

On June 18, 2013 Blacknell asked Ana Pina ("Pina"), an S&B supervisor on the Best Buy line, to interview Rice and Baker for a possible assignment with S&B in the Best Buy department. S&B maintains that the only assignment Pina was seeking to fill that day was the Triage Station, and that, in advance of the interview, neither Blacknell nor Staff Force informed Pina that Rice and Baker have hearing impairments, or arranged for a sign language interpreter for Rice or Baker. The EEOC maintains that Blacknell *did* inform Pina that Rice and Baker are deaf. It also contends that, of the list of job duties Rice and Baker would be required to perform if they were selected for the Best Buy position at S&B, none involved hearing or listening to devices.

During the interview, once it became apparent to Pina that Rice and Baker are deaf, Pina began to write her questions so that Rice and Baker could understand them. S&B maintains that, given that the only assignment Pina was seeking to fill that day was the Triage Station, which required continuously testing the volume levels on iPhones, Pina informed Blacknell that she could not accept Rice or Baker for assignment that day, but she told Blacknell that Staff Force should bring Rice and Baker back to S&B a week or two later when S&B would likely be seeking to fill assignments in the packaging department, which does not require testing the volume on iPhones. The EEOC maintains that Pina told Blacknell that, because she would spend much of the time writing Rice's and Baker's training instructions, she could not hire either Rice or Baker. Neither Rice nor Baker ever returned to S&B to interview for a packaging department assignment.

- 5 -

In July 2013 Rice and Baker filed with the EEOC charges of discrimination, contending that S&B and Staff Force discriminated against them, in violation of the ADA. After completing its investigation, the EEOC filed this lawsuit against S&B, alleging that S&B failed or refused to hire Rice and Baker because of their disability, and failed to provide them a reasonable accommodation during the application process, in violation of the ADA.

S&B moves for summary judgment on the ground that it is not a "covered entity" under the ADA for purposes of the claims of Rice and Baker, because it was not their employer or joint employer, and because Rice and Baker never sought or were denied employment with S&B.  The EEOC moves for partial summary judgment on various of S&B's affirmative defenses.  Both motions are opposed.

II

When a party moves for summary judgment on a claim or defense on which the opposing party will bear the burden of proof at trial, the moving party can meet its summary judgment obligation by pointing the court to the absence of admissible evidence to support the opposing party's claim or defense.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once the moving party does so, the opposing party must go beyond its pleadings and designate specific facts showing there is a genuine issue for trial.  *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).  An issue is genuine if the evidence is such that a reasonable jury could return a verdict in the opposing party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The opposing

- 6 -

party's failure to produce proof as to any essential element of a claim renders all other facts immaterial. *See TruGreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment is mandatory if the opposing party fails to meet this burden. *Little*, 37 F.3d at 1076.

III

The ADA provides that no "covered entity" shall "discriminate against a qualified individual on the basis of disability" with regard to, *inter alia*, the hiring of employees. 42 U.S.C. § 12112(a).[7] The ADA defines "covered entity" to mean "an employer, employment agency, labor organization, or joint labor-management committee." *Id.* § 12111(2). S&B moves for summary judgment on the ground that it was not Rice's or Baker's "employer," and, accordingly, was not a "covered entity" for purposes of the EEOC's ADA claims.

The court begins by addressing the EEOC's contention that, because S&B admitted in its answer that it is a "covered entity" under the ADA, has not amended its answer, and has not pleaded the defense that it is not a "covered entity" under the ADA, S&B is bound by its pleadings and is estopped from now asserting that it was not Rice's or Baker's employer or joint employer for purposes of this lawsuit. The court concludes that S&B's admissions in its answer do not preclude it from arguing that, *as to Rice and Baker*, it was

---

[7]Under the ADA, to "discriminate" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A).

not a "covered entity," (i.e., S&B was neither an employer or joint employer of Rice and Baker).

Although S&B admitted in its answer that "[a]t all relevant times, [it] has been a covered entity under Section 101(2) of the ADA," Compl. ¶ 6, as it explains in its reply, it did so because it is a covered entity under the ADA in connection with its own employees, and this statement does not reference or implicate Rice and Baker, their claims in the lawsuit, or other Staff Force employees. S&B clearly denied in its answer that the temporary, contractual positions Rice and Baker sought were for employment directly with S&B, and S&B pleaded as an affirmative defense:

> [p]ending further review, to the extent Defendant is not an employer or joint employer of Katelynn Baker and Tia Rice (and would not have been an employer or joint employer of Katelynn Baker and Tia Rice had they been selected) under the ADA, Defendant asserts this defense. Pending further review, to the extent Katelynn Baker and Tia Rice were not employees or prospective employees of Defendant (and would not have been had they been selected), Defendant asserts this defense.

Aff. Defenses ¶ 23. Reading S&B's answer and affirmative defenses as a whole, it is clear that in admitting, generally, that it is a "covered entity" under the ADA, S&B did not admit that it was the employer or joint employer of Rice and Baker for purposes of the EEOC's ADA claims. Rather, S&B's answer and affirmative defenses clearly state S&B's position that it was not Baker's or Rice's employer or joint employer. Accordingly, the court rejects

the EEOC's estoppel argument.[8]

## IV

The court now turns to S&B's contention that it is entitled to summary judgment on the ground that S&B was not Rice's or Baker's employer.

## A

The ADA provides, in pertinent part, that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to . . . the hiring . . . of employees." 42 U.S.C. § 12112(a).  "To be liable under . . . the ADA, a defendant must have been the plaintiff's employer" or prospective employer.  *Williams v. Shinseki*, 2012 WL 3166009, at *2 (N.D. Tex. Aug. 6, 2012) (Fitzwater, C.J.) (citing *Bernard v. ATC VanCom*, 2005 WL 139110, at *5 (N.D. Tex. Jan. 20, 2005) (Fitzwater, J)); *see also Bayless v. Orkin Exterminating Co.*, 67 Fed. Appx. 251, 2003 WL 21195495, at *3 (5th Cir. May 5, 2003) (per curiam) (describing ADA as applying to "prospective employers"); *Bloom v. Bexar Cnty., Tex.*, 130 F.3d 722, 724 (5th Cir. 1997) ("Bexar County is not a 'covered entity' with regard to Bloom because Bexar County was not Bloom's employer.").  In *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222 (5th Cir. 2015), the Fifth Circuit adopted the

---

[8]The EEOC requests that, in the event the court holds that S&B is not estopped from asserting the defense that it is not a covered entity under the ADA, the court reopen discovery for a limited period to enable the EEOC to conduct limited discovery on S&B's claim that it is not a joint employer.  The court denies this request.  As the court explains above, S&B's answer and affirmative defenses provided the EEOC adequate notice that S&B intended to assert that it was not Rice's or Baker's employer or joint employer.  Accordingly, the EEOC is not entitled to further discovery on this issue.

"hybrid economic realities/common law control test" to determine the existence of an employment relationship for purposes of the ADA. *Id.* at 227. "The right to control an employee's conduct is the most important component of this test." *Id.* (quoting *Deal v. State Farm Cnty. Mut. Ins. Co. of Tex.*, 5 F.3d 117, 119 (5th Cir. 1993)). In examining the "control" component, the court considers "whether the alleged employer has the right to hire and fire the employee, the right to supervise the employee, and the right to set the employee's work schedule." *Id.* (quoting *Deal*, 5 F.3d at 119). The economic realities component "focuse[s] on whether the alleged employer paid the employee's salary, withheld taxes, provided benefits, and set the terms and conditions of employment." *Id.* (quoting *Deal*, 5 F.3d at 119).

B

1

S&B contends that, as a matter of law, Rice and Baker were seeking to become temporarily assigned contractors at S&B rather than employees. S&B cites its "Temporary Employee Services Agreement" ("Services Agreement") with Staff Force, which provides that all personnel provided by Staff Force are Staff Force employees,[9] and that "[d]irection

---

[9]The Services Agreement provides, in pertinent part:

> It is the parties' intent that [Staff Force] shall be the sole employer/manager of each Employee. Direction and control of the Employee is the right and responsibility of [Staff Force]. [Staff Force] shall have the sole right and responsibility to hire, discipline, fire, assign and reassign the Employees. [S&B] acknowledges that nothing in this Agreement is intended to limit

- 10 -

and control of the Employee is the right and responsibility of [Staff Force]," D. 3/9/16 App. 402; deposition testimony in which Baker and Rice conceded that they were Staff Force employees and that only they or Staff Force could terminate their employment; deposition testimony in which Rice conceded that she was merely seeking a "temporary assignment" at S&B on June 14 and 18; employment documents provided by Staff Force and signed by Rice and Baker that state, *inter alia*, that they are employees of Staff Force, that only Staff Force can terminate their employment, and that their "employment relationship" with Staff Force was "at will," D. 3/9/16 App. 121; and deposition testimony in which Blacknell testified that Rice and Baker were Staff Force employees, and, had they received a job at S&B on June 14 or June 18, they would have remained Staff Force employees and not become S&B employees. S&B contends that the "remaining factors" demonstrate that Rice and Baker can only be deemed Staff Force employees who were seeking to become contractors at S&B: Staff Force, not S&B, instructed the employees where their planned assignments were and set assignment work schedules, provided employee orientation, and made reassignment decisions; any assignment given to Rice or Baker by S&B was temporary

---

> [Staff Force]'s right, in its sole discretion as employer, to hire, assign, reassign, discipline and/or terminate its Employees. [Staff Force] shall communicate to each and every Employee that it assigns to [S&B] that (i) [Staff Force] is the employer, (ii) [S&B] is the customer and not the employer, and (iii) such employee is only on temporary assignment to [S&B].

D. 3/9/16 App. 402-03.

- 11 -

and was not an indefinite period of employment; Rice and Baker were instructed to return to Staff Force offices for a new assignment after the end of any assignment at S&B; Rice's and Baker's rates of pay and benefits were determined, and paid out directly, by Staff Force; Staff Force maintained all personnel and payroll records for Rice and Baker; for all Staff Force personnel, Staff Force issued the paychecks, withheld the proper amounts for federal, state, and local taxes as well as FICA, made all employer contributions for FICA and federal and state unemployment insurance, and maintained all appropriate and necessary liability, fidelity, and workers' compensation insurance coverage; and Blacknell testified that Rice and Baker were Staff Force employees, that Staff Force was the sole employer for all personnel that it assigned to S&B, and that it was Staff Force's sole responsibility to provide direction and control, hire, fire, discipline, and assign and reassign Staff Force employees.

The EEOC responds that the right to control an employee's conduct is the most important component of the hybrid economic realities/common law control test, and that *S&B*, not Staff Force, was responsible for controlling the work of persons hired on the production line.  In support of this contention, the EEOC relies on evidence that Pina and Johnson are production supervisors responsible for "managing day-to-day operations and core functions of operations in order to achieve and maintain operational excellence," P. 3/30/16 App. 115; that the written job descriptions for Pina and Johnson state that their "Essential Duties and Responsibilities" included, *inter alia*, giving direction to the direct labor associated with operational production lines and being responsible for the review and support of the direct labor staff; that Blacknell testified by deposition and in her affidavit that

- 12 -

Johnson gave workers at S&B specific instructions about job performance and duties; that S&B managers (Fontes, Pina, and Johnson) had the ultimate right to hire or not select an employee for hire; and that the training of all employees on the production lines was planned and controlled by S&B through detailed work instructions created by S&B.

In reply, S&B disputes that Blacknell's affidavit controverts S&B's contention that Staff Force hired, fired, supervised, paid, disciplined, and controlled the Staff Force workers at S&B and argues that, in any event, Blacknell's affidavit states only that she observed Johnson directly interact with workers on the production floor, that Johnson gave specific instructions to these workers, and that S&B informed Staff Force when certain assignments ended, and that these assertions are insufficient to create a fact question on whether S&B was Rice's or Baker's employer or joint employer.[10]

2

In *Burton* the Fifth Circuit addressed whether the plaintiff had adduced sufficient evidence that Freescale Semiconductor, Inc. ("Freescale") was the plaintiff's employer under the ADA. Freescale was a designer and manufacturer of microchips that relied on temporary employees (including the plaintiff) provided by a staffing agency. The Fifth Circuit concluded that, although the economic realities component of the test favored the conclusion

---

[10]S&B has filed a motion for leave to file a supplemental appendix to its reply brief to address the EEOC's allegations, allegedly raised for the first time in response to S&B's motion for summary judgment, that S&B is liable as a "joint employer" and that S&B interfered with the employment opportunities of Rice and Baker. Because considering this additional evidence does not change the outcome of S&B's motion, the court grants the motion for leave to file a supplemental appendix.

that the staffing agency (Manpower) was the plaintiff's employer, the common law control

test pointed to Freescale:

> Freescale had the right to demand Burton's termination from the assignment.  Freescale supervised Burton.  Complaints against her were made by Freescale personnel, while her nominal Manpower supervisor, Arthur Flores, worked primarily at a different Freescale location and never observed her while she worked.  Freescale employees completed performance reviews of Burton's work.  On-the-job corrections and admonishment were delivered by Freescale employees.  Most fundamentally, it was Freescale that decided and insisted that Burton be fired. Burton has offered adequate evidence of an employment relationship.

*Burton*, 798 F.3d at 227.  The panel then held that "[t]he competing tests are in equipoise,"

that "on balance and cognizant of our mandate to 'emphasize' the common law control test,"

the economic realities factors "do not change the outcome," and the court's "emphasis on the

common law control test is dispositive."  *Id.* at 227-28 (quoting *Junio v. Livingston Parish*

*Fire Dist. No. 5*, 717 F.3d 431, 434 (5th Cir. 2013)).

As in *Burton*, most, if not all, of the "economic realities" factors of the hybrid

economic realities/common law control test point in this case to Staff Force as Rice's and

Baker's employer.[11]  But *Burton* instructs that the *right to control* an employee's conduct is

---

[11]The economic realities component "focuse[s] on whether the alleged employer paid the employee's salary, withheld taxes, provided benefits, and set the terms and conditions of employment."  *Burton*, 798 F.3d at 227 (quoting *Deal*, 5 F.3d at 119).  As explained above, S&B has produced evidence that Rice's and Baker's rates of pay and benefits were determined by, and paid directly by, Staff Force; that Staff Force maintained all personnel and payroll records for Rice and Baker; that Staff Force issued paychecks and withheld the proper amounts for federal, state, and local taxes; that Staff Force made all employer contributions for FICA and federal and state unemployment insurance; that Staff Force

the most important component of the hybrid economic realities/common law control test and the component that the court must "emphasize." *Id.* at 227-28.  Although there is certainly evidence in the summary judgment record that could persuade a reasonable jury to find that only Staff Force had the right to control Rice's and Baker's conduct, taking the EEOC's evidence as true and drawing all reasonable inferences in its favor, the court holds that a reasonable jury could also find that S&B had the right to control their conduct.  For example,[12] viewed favorably to the EEOC as the summary judgment nonmovant, the EEOC's proof supports the finding that S&B employees directly supervised workers on the production floor in their departments, gave workers specific instructions about job performance and duties, and had the right to terminate and end the assignment of specific workers at S&B.  In sum, the EEOC has adduced evidence that would enable a reasonable jury to find that, under the common law control test, S&B was Rice's and Baker's prospective employer for purposes of their ADA claims.  *See, e.g., Johnson v. Manpower Prof'l Servs., Inc.*, 442 Fed. Appx. 977, 982 (5th Cir. 2011) (per curiam) ("To be sure, almost

---

maintained all appropriate and necessary liability, fidelity, and workers' compensation insurance; and that Staff Force provided health insurance and life insurance options to its employees.  The EEOC neither disputes this evidence nor offers any evidence of its own that would enable a reasonable jury to find that the "economic realities" factors point to S&B as Rice's and Baker's Employer.

[12]"When this court denies rather than grants summary judgment, it typically does not set out in detail the evidence that creates a genuine issue of material fact."  *Valcho v. Dall. Cnty. Hosp. Dist.*, 658 F.Supp.2d 802, 812 n.8 (N.D. Tex. 2009) (Fitzwater, C.J.) (citing *Swicegood v. Med. Protective Co.*, 2003 WL 22234928, at *17 n.25 (N.D. Tex. Sept. 19, 2003) (Fitzwater, J.)).

all of the factors under the economic realities test point to [staffing agency] being Johnson's employer, as [staffing agency] paid Johnson and withheld taxes on his behalf.  Nonetheless, because the majority of the more important right to control factors point to Air Liquide as Johnson's employer, we conclude that Air Liquide and not [staffing agency] is Johnson's employer for the purposes of his overtime denial claim.").  The court therefore holds that S&B is not entitled to summary judgment dismissing these claims on the basis that S&B was not Rice's and Baker's employer.

C

The EEOC has also raised a genuine issue of material fact on the question whether S&B was Rice's and Baker's prospective "joint employer."

1

S&B moves for summary judgment to the extent the EEOC seeks to proceed on a "joint employer" theory of liability.[13]  It contends that the Fifth Circuit has not clarified which of two competing joint employer tests governs in ADA discrimination cases: the

---

[13]S&B argues at the outset that because the EEOC never pleaded any "joint employer" theory against S&B, it cannot assert this theory or rely on it in opposition to S&B's motion for summary judgment.  The court disagrees.  Rule 8 requires the EEOC to plead facts sufficient to show that its "claim has substantive plausibility," even if its legal theory is not perfectly pleaded.  *Johnson v. City of Shelby, Miss.*, ___ U.S. ___, 135 S.Ct. 346, 347 (2014) (per curiam).  The EEOC has plausibly alleged its ADA claims against S&B by pleading, *inter alia*, that Rice and Baker "applied for jobs with [S&B] through a staffing agency," and that S&B failed or refused to provide them with a reasonable accommodation and told Rice and Baker that it would not hire them.  Compl. ¶¶ 13, 15.  The EEOC's failure to specifically plead that S&B and Staff Force were prospective "joint employers" does not preclude the EEOC from relying on a "joint employer" theory of liability.

- 16 -

"single employer/joint enterprise test" or the "joint employer test."  S&B maintains, however, that under either test, the evidence conclusively establishes that Staff Force and S&B were not Rice's or Baker's joint employers.  S&B concludes that Rice and Baker were independent contractors, and that, under Fifth Circuit authority, they were not owed an accommodation as a matter of law.

The EEOC responds that S&B is Staff Force's joint employer because S&B "made the final decision regarding employment opportunities of Rice and Baker to work at S&B." P. 3/30/16 Br. 21.  It also responds with the evidence from Blacknell's affidavit, explained above, *see supra* § IV(B), that it contends indicates that Johnson and Pina directly supervised the workers on the production lines.

2

"[T]he 'integrated-enterprise test is not a good fit for a case involving one company with a service contract with the other, as opposed to affiliated or related companies such as a parent and a subsidiary.'"  *EEOC v. Valero Refining-Tex. L.P.*, 2013 WL 1168620, at *3 (S.D. Tex. Mar. 13, 2013) (quoting *Boutin v. Exxon Mobil Corp.*, 730 F.Supp.2d 660, 680 (S.D. Tex. 2010)).[14]  "Under the other test, simply called the 'joint employer' test, the 'existence of a joint employer relationship depends on the control . . . one employer

---

[14]The integrated-enterprise test requires consideration of four factors: "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control."  *Trevino v. Celanese Corp.*, 701 F.2d 397, 403-04 (5th Cir. 1983).  Although the court concludes that this test is inapplicable in the context of clearly unrelated companies, it holds that, to the extent this test *would* apply, S&B has established that S&B and Staff Force are not an integrated enterprise.

exercises, or potentially exercises, over the labor relations policy of the other.'" *Id.* (quoting

*N. Am. Soccer League v. NLRB*, 613 F.2d 1379, 1382 (5th Cir. 1980)).  A company becomes

"a joint employer when it, 'while contracting in good faith with an otherwise independent

company, has retained for itself sufficient control of the terms and conditions of employment

of the employees who are employed by the other employer.'"  *Boutin*, 730 F.Supp.2d at 680

(quoting *Virgo v. Riviera Beach Assocs., Ltd.*, 30 F.3d 1350, 1360 (11th Cir. 1994)).  To

decide the question of control, courts have considered factors such as "whether the alleged

joint employer (1) did the hiring and firing; (2) directly administered any disciplinary

procedures; (3) maintained records of hours, handled the payroll, or provided insurance; (4)

directly supervised the employees; or (5) participated in the collective bargaining process."

*Valero Refining-Tex.*, 2013 WL 1168620, at *4 (quoting *AT&T v. NLRB*, 67 F.3d 446, 451

(2d Cir. 1995)); *see also Boutin*, 730 F.Supp.2d at 680 (listing same factors).

Assuming *arguendo* that *Valero* and *Boutin* correctly set forth the joint employer

standard that the Fifth Circuit would follow in ADA cases, the court concludes that S&B is

not entitled to summary judgment on the basis that it is not a joint employer with Staff Force.

The court has already concluded above that the EEOC has adduced sufficient evidence to

permit a reasonable jury to find that, *as to assignments at S&B*, S&B has the ultimate

authority to hire and fire its workers.  The EEOC has also adduced evidence that S&B

directly supervised employees working in its production lines.  This evidence is sufficient

to raise a genuine issue of material fact on the question whether, under the "joint employer"

test, S&B and Staff Force were Rice's and Baker's prospective joint employers.

Accordingly, S&B is not entitled to summary judgment on this ground.[15]

V

In its response to S&B's summary judgment motion, the EEOC argues, under the heading "S&B violated the ADA by interfering with the employment opportunities of Rice and Baker," P. 3/30/16 Br. 25, that even if Rice and Baker were merely independent contractor applicants, S&B should still be held liable under the ADA for the "loss of opportunity by Rice and Baker to work at S&B industry." *Id.* at 26. The court disagrees. In the Fifth Circuit,[16] the protections afforded by the ADA extend to employees (or prospective employees), *but not to independent contractors. See Flynn v. Distinctive Home Care, Inc.*, 812 F.3d 422, 427 (5th Cir. 2016) (noting that "[a]lthough this Circuit has not directly addressed the issue, other federal circuit and district courts overwhelmingly agree that a plaintiff may only sue a defendant under Title I of the ADA if the plaintiff is an employee, rather than an independent contractor, of the defendant," and holding that because

---

[15]The court concludes today only that the EEOC's summary judgment evidence is sufficient to establish that S&B is Rice and Baker's prospective employer or that Staff Force and S&B are joint employers. The court expresses no opinion on the effect of such a finding on the EEOC's ADA claims against S&B.

[16]In arguing that "S&B violated the ADA by interfering with the employment opportunities of Rice and Baker," P. 3/30/16 Br. 25, the EEOC cites only one Fifth Circuit opinion: *Broussard v. L.H. Bossier, Inc.*, 789 F.2d 1158, 1160 (5th Cir. 1986). In *Broussard* the court concluded, under the economic realities test, that the plaintiff was an independent contractor, not an employee, for Title VII purposes. *See id.* at 1159 (stating, *in dicta*, that what is "*not relevant* [to the plaintiff's Title VII claim] is case law addressing refusals to hire or whether Title VII covers a claim that a person satisfying the statutory definition of an employer . . . has interfered with an individual's employment opportunities with another employer." (emphasis added)).

- 19 -

plaintiff conceded she was an independent contractor of defendant, she could not sue defendant under the ADA); *Reith v. TXU Corp.*, 2006 WL 887413, at *4 (E.D. Tex. Apr. 4, 2006) ("ADA . . . protect[s] employees but not independent contractors." (citing *Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 642 (7th Cir. 2004))); *see also, e.g., Hickey v. Arkla Indus., Inc.*, 699 F.2d 748, 753 (5th Cir. 1983) (holding that analogous ADEA does not protect independent contractors because they are not employees).  Accordingly, to the extent a jury finds that Rice and Baker were prospective *independent contractors* of S&B—but not prospective *employees* of S&B—they will not be entitled to recover on their claims for discrimination and failure to accommodate under the ADA.[17]

## VI

The court now turns to the EEOC's motion for partial summary judgment on S&B's affirmative defenses Nos. 1, 2, 4, 5, 12, 13, 14, 16, 17, 20, and 22.

## A

The court addresses as a threshold matter S&B's contention that, because the EEOC, without leave of court, filed its motion for summary judgment 26 days after the scheduling order's April 1, 2016 deadline for filing summary judgment motions, the court should deem EEOC's motion untimely filed and strike the motion.

---

[17]Moreover, to the extent the EEOC intends to argue that S&B interfered with Rice and Baker's employment opportunities *with Staff Force*, there is no evidence, nor does the EEOC argue, that Rice's or Baker's employment with Staff Force was affected in any way by S&B's actions.

1

On May 29, 2015 the court entered a scheduling order that provided that a party must file a motion for summary judgment no later than April 1, 2016.  On February 26, 2016 the parties filed a joint motion to extend the scheduling order's "other motion" deadline to May 2, 2016 "so S&B has adequate time to consider and prepare a *Daubert* Motion or other motion relating to" the EEOC's expert.  Jt. Mot. to Extend at 4.  The February 26, 2016 joint motion did not mention the April 1, 2016 summary judgment deadline.  On March 2, 2016 the court granted the parties' February 26, 2016 motion, extending the "other motion" deadline in the scheduling order to May 2, 2016.

On April 27, 2016 the EEOC filed the instant motion for partial summary judgment. S&B objects to the motion and moves to strike it as untimely.  The EEOC does not dispute that April 1, 2016 was the summary judgment motion deadline and that its April 27, 2016 motion was untimely.  It acknowledges that it mistakenly calendared the "other motion" deadline as the summary judgment deadline.  And it asks the court, in its discretion, to excuse the EEOC's delay and consider the motion because S&B has not been prejudiced.  In the alternative, the EEOC requests that the court convert the motion into a motion for judgment on the pleadings, which would be timely under the "other motions" deadline.

2

Rule 16(b)(3)(A) provides that the court's "scheduling order must limit the time to join other parties, amend the pleadings, complete discovery, and file motions."  Rule 16(b)(4) states that "[a] schedule may be modified only for good cause and with the judge's consent."

"The 'good cause' standard focuses on the diligence of the party seeking to modify the scheduling order." *Cut-Heal Animal Care Prods., Inc. v. Agri-Sales Assocs., Inc.*, 2009 WL 305994, at *1 (N.D. Tex. Feb. 9, 2009) (Fitzwater, C.J.).  Mere inadvertence on the part of the movant, and the absence of prejudice to the nonmovant, are insufficient to establish "good cause." *Id.*; *Price v. United Guar. Residential Ins. Co.*, 2005 WL 265164, at *4 (N.D. Tex. Feb. 2, 2005) (Fish, C.J.) (citing *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990)).  "Instead, the movant must show that, despite her diligence, she could not reasonably have met the scheduling deadline." *Matamoros v. Cooper Clinic*, 2015 WL 4713201, at *2 (N.D. Tex. Aug. 7, 2015) (Fitzwater, J.) (citing *S & W Enters., L.L.C. v. SouthTrust Bank of Ala., N.A.*, 315 F.3d 533, 535 (5th Cir. 2003)).

The court assesses four factors when deciding whether to grant a motion for leave to file an untimely motion under Rule 16(b)(4): "(1) the explanation for the failure to timely [file the motion]; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *S & W Enters.*, 315 F.3d at 536 (citation, internal quotation marks, and brackets omitted).  The court considers the four factors holistically and "does not mechanically count the number of factors that favor each side." *EEOC v. Serv. Temps, Inc.*, 2009 WL 3294863, at *3 (N.D. Tex. Oct. 13, 2009) (Fitzwater, C.J.), *aff'd*, 679 F.3d 323 (5th Cir. 2012).

Because the EEOC has neither moved for leave to amend the scheduling order to permit it to file its motion for partial summary judgment after the deadline nor addressed, other than in conclusory terms, the Rule 16(b)(4) factors, the court declines to amend the

- 22 -

scheduling order to permit the EEOC to file its motion for partial summary judgment.  The court grants, however, the EEOC's alternative request to convert its motion for partial summary judgment into a motion for judgment on the pleadings.  Because a judgment on the pleadings may be filed at any time after the pleadings are closed so long as it filed "early enough not to delay trial," Rule 12(c); because, under the scheduling order, a judgment on the pleadings would constitute an "other motion" that was required to be filed by May 2, 2016; and because the EEOC filed the motion before May 2, 2016, the court will treat the EEOC's motion for partial summary judgment as a timely-filed motion under Rule 12(c) for judgment on the pleadings.

B

The standard for deciding a motion under Rule 12(c) is the same as the one for deciding a motion under Rule 12(b)(6).  *See, e.g., Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 n.8 (5th Cir. 2002) ("A number of courts have held that the standard to be applied in a Rule 12(c) motion is identical to that used in a Rule 12(b)(6) motion." (citation omitted)).  This court has held, however, that when a party moves to dismiss an affirmative defense, the court does not apply the pleading standards set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  *See Klein v. Fed. Ins. Co.*, 2014 WL 4476556, at *5 (N.D. Tex. Sept. 11, 2014) (Fitzwater, C.J.) (citing *Mary Kay, Inc. v. Dunlap*, 2012 WL 2358082, at *8 (N.D. Tex. June 21, 2012) (Fitzwater, C.J.); *SEC v. Cuban*, 798 F.Supp.2d 783, 795 n.13 (N.D. Tex. 2011) (Fitzwater, C.J.); *EEOC v. Courtesy Bldg. Servs., Inc.*, 2011 WL 208408, at *2 (N.D. Tex.

Jan. 21, 2011) (Fitzwater, C.J.)).   Instead, the court applies the "fair notice" pleading standard for affirmative defenses set forth in *Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir. 1999).   *See Cuban*, 798 F.Supp.2d at 795 n.13.   Accordingly, to adequately plead an affirmative defense, there must be enough factual particularity to give the plaintiff "fair notice of the nature of the affirmative defense and prevent unfair surprise." *Mary Kay*, 2012 WL 2358082, at *8 (quoting *Cuban*, 798 F.Supp.2d at 795 n.13).   "Although . . . in some instances merely pleading the name of the affirmative defense may be sufficient, a 'fact-specific inquiry' is required to determine whether the pleadings set forth the 'minimum particulars' needed to ensure the plaintiff is not the victim of unfair surprise."   *Id*. (quoting *Woodfield*, 193 F.3d at 362).

C

The EEOC contends that it is entitled to dismissal of S&B's affirmative defenses Nos. 1, 4, 5, 12, 14, 16, 17, 20, and 22 on the ground that these defenses "are simply conclusory allegations that do not give EEOC fair notice of the defense being asserted."  P. 4/27/16 Br. 1.  In support, the EEOC cites the content of affirmative defenses Nos. 1, 4, 5, 12, 14, 16, 17, 20, and 22 and cites the pleading standard for affirmative defenses, but it does not explain why any of these affirmative defenses is deficient.  It is not the court's burden to analyze each of these nine affirmative defenses and determine, without specific argument from the EEOC, whether any is conclusory and fails to give fair notice of the defense being asserted.  Accordingly, the court denies the EEOC's motion to dismiss S&B's affirmative defenses Nos. 1, 4, 5, 14, 16, 17, 20, and 22.  Because the parties appear to agree that no fact issue

exists regarding S&B's affirmative defense No. 12, *see* D. 5/17/16 Br. 3, 24; P. 5/31/16 Reply 4, the court strikes this affirmative defense.

## D

The EEOC contends that it is entitled to a dismissal of S&B's affirmative defense No. 13.[18] Regarding the defense of laches, the EEOC contends that laches does not apply because there is no evidence of a delay by the EEOC in prosecuting this case under the ADA, nor can S&B prove any prejudice as a result of any delay. Regarding estoppel and waiver, the EEOC contends that, because S&B has not specifically alleged facts supporting any credible argument for estoppel or waiver, the EEOC is not in a position to prepare adequately to respond to these defenses. S&B responds that the doctrine of laches bars the EEOC's unpleaded claims for "joint employer" and "interference with employment opportunities," and that waiver also bars these unpleaded claims. S&B does not respond regarding its estoppel defense.

The court strikes S&B's affirmative defense No. 13 to the extent S&B asserts the doctrines of estoppel, laches, or waiver. As currently pleaded, S&B's affirmative defense No. 13 provides no detail that would give the EEOC notice that S&B intended to rely on the doctrines of laches and waiver to contend that the EEOC is not permitted to rely on unpleaded claims or legal theories. Moreover, as a practical matter, to the extent the EEOC

---

[18]Affirmative defense No. 13 states: "Pending discovery, Plaintiff's claims brought on behalf of Katelynn Baker and Tia Rice are barred by the doctrines of laches, waiver, estoppel, and unclean hands." Aff. Defenses ¶ 13.

intends to rely on a "joint employer" theory of liability, the court has already concluded that the EEOC has adequately pleaded its ADA claims and is not required to plead a "joint employer" theory of liability.  *See supra* note 13.  And to the extent the EEOC intends to argue that S&B interfered with its employment opportunities, the court has already concluded that there is no evidence that Rice's or Baker's employment with Staff Force was affected in any way by S&B's actions.  *See supra* note 16.

E

The EEOC contends that it is entitled to a dismissal of S&B's affirmative defense No. 2,[19] regarding conciliation, because the evidence shows that the EEOC notified S&B of its specific allegations that S&B violated the ADA by refusing to hire Rice and Baker and denying Baker and Rice a reasonable accommodation during the application and interview process; sent S&B a draft conciliation agreement containing non-monetary and monetary relief necessary to settle the case; and engaged in discussion so that the parties could resolve the case without court intervention.  The EEOC contends that it is entitled to a dismissal of S&B's affirmative defense No. 4[20] because the evidence shows that it has met all administrative prerequisites.  The EEOC concedes in its reply that "with respect to S&B's

---

[19]S&B alleges as affirmative defense No. 2 that "Plaintiff has failed to comply with mandatory statutory prerequisites to initiating this action, including, but not limited to, a failure to conciliate in good faith.  Because of this failure this lawsuit should be dismissed."  Aff. Defenses ¶ 2.

[20]S&B's affirmative defense No. 4 states: "Plaintiff has failed to meet the administrative prerequisites necessary to file some, or all, of its claims brought on behalf of Katelynn Baker and Tia Rice."  Aff. Defenses ¶ 4.

affirmative defenses nos. 2 and 4, . . . these defenses would properly be disposed of by a motion for summary judgment." P. 5/31/16 Reply 4. The court agrees. Accordingly, the EEOC's motion to dismiss S&B's affirmative defenses Nos. 2 and 4 is denied.

F

In sum, treating the EEOC's motion for partial summary judgment as a motion for judgment on the pleadings under Rule 12(c), the court grants the EEOC's motion and strikes S&B's affirmative defense Nos. 12 and 13 to the extent S&B asserts the defenses of laches, estoppel, and waiver. The court otherwise denies the EEOC's motion.

*   *   *

For the foregoing reasons, S&B's motion for summary judgment is denied. Treating the EEOC's motion for partial summary judgment as a Rule 12(c) motion for judgment on the pleadings, the court grants the motion in part and denies it in part. The court grants S&B's motion for leave to file a supplemental appendix.

**SO ORDERED**.

December 8, 2016.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE